UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

**DAVID W. HOWARD,**

       **Plaintiff,**                     **CIVIL ACTION NO. 11-13686**

       **vs.**                                **DISTRICT JUDGE BERNARD A. FRIEDMAN**

**COMMISSIONER OF**              **MAGISTRATE JUDGE MONA K. MAJZOUB**
**SOCIAL SECURITY,**

       **Defendant.**
_____/

## REPORT AND RECOMMENDATION

**I.**    **RECOMMENDATION:** This Court recommends that Plaintiff's Motion for Summary Judgment (docket no. 8) be denied, Defendant's Motion for Summary Judgment (docket no. 11) be granted, and Plaintiff's complaint be dismissed.

**II.**    **PROCEDURAL BACKGROUND**

On March 18, 2008 Plaintiff protectively filed an application for a period of disability and disability insurance benefits, alleging disability beginning August 30, 2007. The application was denied and Plaintiff filed a timely request for a *de novo* hearing. On July 13, 2010 Plaintiff appeared without representation in Lansing, Michigan and testified at a hearing held before Administrative Law Judge (ALJ) Lawrence E. Blatnik. Vocational Expert (VE) Norman Abeles, Ph.D., also appeared and testified at the hearing. In an October 4, 2010 decision the ALJ found that Plaintiff was not entitled to disability benefits because there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. (TR 13-22).

The Appeals Council granted Plaintiff's request for review and concluded that Plaintiff had the severe impairment of obesity in addition to the other severe impairments listed by the ALJ, noting that Plaintiff was 5'11", 417 pounds, with a body mass index of 58.2. (TR 4-7, 122-25). The Appeals Council found that the evidence showed that Plaintiff's gait was normal and unassisted despite his obesity. They concluded that Plaintiff was not disabled due to the effects of obesity alone or in combination with Plaintiff's other impairments, and determined that the RFC accounted for Plaintiff's obesity. The Appeals Council adopted the ALJ's finding that Plaintiff was not disabled because he was able to make a successful adjustment to other work. Subsequently, Plaintiff commenced the instant action for judicial review. The parties filed cross Motions for Summary Judgment and the issue for review is whether Defendant's denial of benefits was supported by substantial evidence in the record.

### III.     PLAINTIFF'S TESTIMONY, WITNESS TESTIMONY, AND RECORD EVIDENCE

#### A.     Plaintiff's Testimony

Plaintiff was one month short of age thirty-nine on his alleged disability onset date. (TR 35). He is divorced and lives at home with his parents. (TR 35-36). Plaintiff has a driver's license and drives to visit his friends or run errands three or four times a week. (TR 36-37). He has a high school diploma and states that he participated in the special education program for the learning disabled from fifth grade through the twelfth grade. (TR 37-38). He participated in vocational courses in high school to prepare him for custodial work. Plaintiff has past employment as a custodian, caregiver in an adult care facility, delivery shift leader in a pizza parlor, and grocery store stock clerk. He testified that he was required to drive a forklift and manually lift between forty and

fifty pounds in his past jobs. He testified that he has worked with Michigan Rehabilitation Services for several years.

Plaintiff testified that he injured his right knee in a work-related accident and required two surgeries to repair the damage. (TR 40). He states that he is partially deaf in his right ear, he suffers migraines at least once or twice a week lasting up to two days which he treats with over-the-counter Motrin, and he uses a CPAP mask for sleep apnea. (TR 49, 57). Plaintiff states that he can walk and sit approximately thirty minutes at a time, lift approximately one gallon of milk, bend if he has a table or object to help support his weight, and attend to his personal care and hygiene. (TR 53-56, 58). He testified that he has no trouble using his hands or fingers to do things. (TR 56). Plaintiff lives on the second floor of his parents' home and can walk up and down the stairs using the handrail. (TR 56). He assists with chores as he is able and he picks up items from the grocery store several times a week. (TR 59). He enjoys watching television, looking at books, and playing computer games. (TR 60).

**B.     Witness Testimony**

Plaintiff's mother appeared at the hearing and testified that Plaintiff lived on his own until he had either a stroke or heart attack, which triggered his move back into his parent's home. (TR 65). She stated that he suffers from depression and his mind races. She testified that Plaintiff enrolled in college courses but flunked out after only two semesters. (TR 67).

**C.     Medical Evidence**

In 1982, when he was in seventh grade, a school psychologist performed a psychological and learning disabilities evaluation on Plaintiff. (TR 205). The school psychologist opined that Plaintiff had excellent intellectual potential but he was limited by weaknesses in visual, motor, and auditory

skills. The school psychologist concluded that Plaintiff needed daily learning disability classroom help. (TR 205).

In 1985, when Plaintiff was enrolled in eleventh grade, he underwent a second psychological evaluation by a school psychologist. (TR 206). Results from the Wechsler Intelligence Scale for Children - Revised (WISC-R) show that Plaintiff had IQ scores in the average range, with a full scale IQ of 102, a verbal IQ of 100, a performance IQ of 105, and a regression score of 100. (TR 200, 206). He tested at a third grade level for reading and writing, and a fifth grade level for math. (TR 200, 206). The school psychologist found that Plaintiff's intellectual functioning was within the average range, with academic deficits in reading, math, and writing, and processing deficits in auditory memory and auditory discrimination. (TR 208). The school psychologist concluded that Plaintiff qualified for special education services as a learning disabled student. (TR 208).

In May 1986 an Individualized Educational Plan (IEP) from Lenawee Intermediate School District identified Plaintiff as learning disabled with specific weaknesses in reading, writing, and arithmetic. (TR 201). Plaintiff was placed in vocational training for building services and he was provided with special education services through the learning disabilities program, meaning that he was placed in a regular classroom and assigned a teacher consultant to provide academic assistance. (TR 203).

On May 19, 2008 licensed psychologist Dr. Elizabeth Bishop, Ph.D., completed a psychiatric/psychological medical report for the state disability determination service. (TR 284-87). Dr. Bishop documented that Plaintiff was diagnosed with dyslexia and ADD in the fifth grade, and noted that he had no mental health treatment other than with the school psychologist. (TR 284). Dr. Bishop stated that Plaintiff cares about his family and his niece, and most days will do things with

one of his parents, like cook a meal, watch television, wash laundry, or run errands. (TR 285). She observed that Plaintiff drove himself to the appointment, arrived early, and came alone. (TR 285). She also observed that Plaintiff had a normal unassisted gait and normal posture. Dr. Bishop reported that Plaintiff had good eye contact, good contact with reality, appropriate affect, and spontaneous, clear, and logical speech. (TR 285). She documented that Plaintiff had thoughts of suicide but no plans or attempts. Dr. Bishop documented that Plaintiff had a breathing-related sleep disorder, learning disorder, attention deficit hyperactivity disorder and a GAF of 65. (TR 286).

On May 19, 2008 psychologist Dr. David Biscardi, Ph.D., completed a Mental RFC Assessment and Psychiatric Review Technique. (TR 289-307). The Mental RFC states that Plaintiff was moderately limited in the following areas: (1) ability to understand, remember, and carry out detailed instructions; (2) ability to maintain attention and concentration for extended periods; (3) ability to complete a normal work day and work week without interruptions from psychologically based symptoms and perform at a consistent pace without an unreasonable number and length of rest periods; (4) ability to respond appropriately to changes in the work setting; and (5) ability to set realistic goals or make plans independently of others. (TR 290-91). In all other areas Plaintiff was not significantly limited. Dr. Biscardi concluded that Plaintiff retained the ability to understand, remember, carry out and sustain performance of simple routine tasks, complete a normal work day, interact with others and adapt to changes/stressors with simple routine competitive work activities. (TR 292).

Dr. Biscardi's Psychiatric Review Technique documents that Plaintiff was mildly restricted in activities of daily living and maintaining social functioning, moderately restricted in maintaining concentration, persistence, or pace, with no episodes of decompensation. (TR 304). He found that

5

the evidence did not establish the presence of the "C" criteria and concluded that Plaintiff's allegations were partially consistent with the medical evidence of record. (TR 305-06).

A Michigan Rehabilitation Services Case Note dated March 20, 2009 reports that Plaintiff tested at a sixth grade level in math, seventh grade level in reading comprehension, fourth grade level in reading/word recognition, and second grade level in spelling. The Center recommended educational training in a specific career area. (TR 308).

On March 11, 2009 licensed psychologist Dr. Robert Brady performed a Neuropsychological Screening on Plaintiff. (TR 309-322). Dr. Brady noted that although Plaintiff reported a daily pain level of five on an ascending ten-point scale, with a ten at it's worst, he was not on any medications and did not use knee braces or supports. Dr. Brady administered the Weschler Adult Intelligence Scale - Third Edition, on which Plaintiff earned a verbal IQ score of 99, a performance IQ score of 94, and a full scale IQ score of 97. On the Wide Range Achievement Test - Revision 3 (WRAT-3) Plaintiff obtained a fourth grade level in reading, a second grade level in spelling, and a sixth grade level in arithmetic. On the Wechsler Individual Achievement Test (WIAT) Plaintiff obtained a score of 89 and a seventh grade level on the reading comprehension subtest. (TR 312). On the Work Sample Assembly Task (WSAT), which measures fine motor manual skills, finger dexterity, and visual planning and sequencing, Plaintiff accurately completed six nut and bolt assemblies with some verbal prompts and good to excellent concentration. (TR 314). Dr. Brady observed that Plaintiff tested in the mild range for clinical depression and noted that although Plaintiff reported a history of ADHD, few symptoms of ADHD were evident during the testing. (TR 316). Dr. Brady assigned Plaintiff a GAF of 65 and concluded that he had superior strengths in fine motor manual skills and finger dexterity; above average strength in social judgment skills and immediate visual

6

memory; and high average strengths in immediate logical semantic memory, delayed visual memory, word knowledge and vocabulary, verbal reasoning skills, and fluid intelligence. (TR 317-19).

As for the evidence pertaining to Plaintiff's physical impairments, on September 21, 2007 Dr. Michael Diment evaluated Plaintiff for right knee pain. (TR 216). Dr. Diment observed that Plaintiff could move his knee slowly but completely through a range of motion with some tenderness but no instability in his knee. Plaintiff was given a modified work status with a sit down option and limited to no lifting over thirty pounds. (TR 217, 219, 223). On October 9, 2007 Dr. Michael Diment again opined that Plaintiff had a good range of motion. After studying the results of an MRI, Dr. Diment diagnosed Plaintiff with a medial meniscus tear with thickened fibers of the ACL. (TR 212, 273). Plaintiff underwent right knee arthroscopic surgery and partial medial and lateral meniscectomy on October 11, 2007, at which time it was determined that he had a torn medial and lateral meniscus combined with fraying of the fibers of the ACL. (TR 262, 264).

Treatment notes from Carter Rehabilitation Center show that Plaintiff had thirty-eight physical therapy treatments between October 26, 2007 and January 29, 2008, and reported a seventy percent improvement since beginning physical therapy. (TR 255). Plaintiff rated his pain at rest as a one to one and one half on a ten-point scale, with activity his pain was a two on a ten-point scale, on a good day his pain was a two on a ten-point scale, and on a bad day his pain was a two and one half on a ten-point scale.

On January 2, 2008 Plaintiff presented for treatment and was observed to walk with a slight limp, move his knee through a fairly full range of motion, and fully extend the knee with some discomfort. (TR 257). A January 30, 2008 treatment note states that Plaintiff had hit a plateau with

his therapy. On physical examination Plaintiff had full extension of his knee, less than full flexion and some pain. (TR 254).

On April 23, 2008 Dr. Saadat Abbasi completed a Physical RFC Assessment and opined that Plaintiff could lift twenty pounds occasionally and ten pounds frequently; stand, walk, and sit six hours in an eight-hour work day; with unlimited push/pull activities. (TR 277). Dr. Abbasi found that Plaintiff could occasionally balance, stoop, kneel, crouch, crawl, and climb ramps, stairs, ladders, ropes, and scaffolds. (TR 278). He also determined that Plaintiff had no postural, visual, communicative, or environmental limitations.

## IV.    VOCATIONAL EXPERT TESTIMONY

The Vocational Expert (VE) testified that Plaintiff's past work as a grocery store stocker, aide for an adult care facility, custodian, and shift leader/cook at a pizza parlor constituted medium, unskilled work. (TR 70). The ALJ asked the VE to consider an individual with the same age, education, and work experience as Plaintiff, who was limited to lifting and carrying no more than twenty pounds occasionally and ten pounds frequently; who can sit, stand, or walk six hours in an eight-hour work day, but who would require a sit/stand option where he could change position every thirty to forty-five minutes; who cannot kneel, squat, or climb ladders, ropes, or scaffolds; and who can only occasionally balance, stoop, crouch, crawl or climb ramps or stairs. (TR 70-71). In addition, the individual would be limited to simple, unskilled work with a specific vocational preparation (SVP) code of one or two; and limited to work that does not require concentration on detailed precision or simultaneous tasks, does not involve frequent significant changes or adaptations, does not require taking initiative or making independent decisions, and does not involve meeting production quotas, goals, or keeping pace with co-workers. (TR 70-71).

The VE testified that the individual could not perform Plaintiff's past work with these limitations, but could perform sustained work for eights hours a day, forty hours per week. (TR 71). The VE testified that there are a significant number of full-time, light jobs with a sit/stand option existing in the lower half of the lower peninsula of Michigan the individual could perform, such as surveillance system monitor, small parts assembler in a business with no production demands, inspecting/checking/examining jobs that require no production, machine operation jobs, telephone clerk, and charge account clerk, comprising 24,500 jobs. (TR 71-72).

The ALJ asked the VE whether there were sedentary jobs available for an individual with the same postural limitations as in the previous hypothetical, but who was limited to lifting ten pounds occasionally, less than ten pounds frequently, and standing and walking two hours in an eight hour work day. (TR 72). The VE testified that the same job titles, although different jobs, would be available for an individual with these limitations, with a fifty percent reduction in the number of jobs. (TR 72). Next, the ALJ asked whether the hypothetical individual would be able to perform the listed jobs if he was also limited to lifting less than thirty pounds, with no pushing, pulling, kneeling, or squatting. (TR 73). The VE testified that the individual would be capable of performing all of the listed jobs with these added restrictions. If the individual would have difficulty maintaining attention and concentration, and remaining productive for the majority of the work day, he could not do any job in the economy. (TR 73-74). The VE further testified that if Plaintiff's testimony of pain and limitations were found to be fully credible, he would not be able to work any job in the economy. (TR 74-75).

## V. ADMINISTRATIVE LAW JUDGE'S DETERMINATION

The ALJ found that although Plaintiff had not engaged in substantial gainful activity since

9

August 30, 2007, the alleged onset date, and suffered from the severe impairments of right knee medial meniscal tear, status-post arthroscopy, sleep apnea, a learning disorder, attention deficit hyperactivity disorder (ADHD), depression, and a dependent personality disorder, he did not have an impairment or combination of impairments that meets or medically equals a listed impairment. (TR 15-16). The ALJ determined that Plaintiff retained the RFC to perform simple, unskilled sedentary work with an SVP rating of one or two, with the added limitations that he can lift or carry ten pounds occasionally and less than ten pounds frequently, walk or stand up to two hours in an eight-hour work day, sit at least six hours in an eight-hour work day with a sit/stand option that enables him to change position every thirty to forty-five minutes, and occasionally climb ramps or stairs, balance, stoop, crouch, and crawl, but never kneel, squat, or climb ladders, scaffolds, and ropes. In addition, the ALJ found that Plaintiff was limited to work that does not require frequent significant changes or adaptations, does not involve meeting production quotas, goals, or keeping pace with co-workers, and does not require taking initiative or making independent decisions. (TR 17-20). The ALJ concluded that Plaintiff was unable to perform past relevant work, but could perform a significant number of jobs in the economy. (TR 20-22). Consequently, the ALJ found that Plaintiff had not been under a disability as defined in the Social Security Act from August 30, 2007 through October 4, 2010, the date of the decision.

## VI.   LAW AND ANALYSIS

### A.   Standard Of Review

Pursuant to 42 U.S.C. § 405(g), the district court has jurisdiction to review the Commissioner's final decisions. Judicial review under this statute is limited to determining whether the Commissioner's findings are supported by substantial evidence and whether the Commissioner's

decision employed the proper legal standards. *Walters v. Comm'r*, 127 F.3d 525, 528 (6th Cir. 1997). Substantial evidence is more than a scintilla but less than a preponderance; it is " 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' " *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).

In determining the existence of substantial evidence, the court must examine the administrative record as a whole. *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 536 (6th Cir. 1981). If the Commissioner's decision is supported by substantial evidence, it must be affirmed, even if the reviewing court would decide the matter differently, *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983), and even if substantial evidence also supports the opposite conclusion. *Her v. Comm'r*, 203 F.3d 388, 389-90 (6th Cir. 1999).

**B.     Framework for Social Security Disability Determinations**

Plaintiff's Social Security disability determination was made in accordance with a five step sequential analysis. In the first four steps, Plaintiff was required to show that:

1. he was not presently engaged in substantial gainful employment; and
2. he suffered from a severe impairment; and
3. the impairment met or was medically equal to a "listed impairment;" or
4. he did not have the residual functional capacity to perform his past relevant work.

20 C.F.R. § 404.1520(a)-(f). If Plaintiff's impairments prevented him from doing his past relevant work, the Commissioner, at step five, would consider Plaintiff's RFC, age, education and past work experience to determine if he could perform other work. If he could not, he would be deemed disabled. 20 C.F.R. § 404.1520(g). The Commissioner has the burden of proof only on "the fifth step, proving that there is work available in the economy that the claimant can perform." *Her*, 203 F.3d at 391. To meet this burden, the Commissioner must make a finding "supported by substantial

evidence that [plaintiff] has the vocational qualifications to perform specific jobs." *Varley v. Sec'y of Health & Human Servs.,* 820 F.2d 777, 779 (6th Cir. 1987) (citation omitted). This "substantial evidence" may be in the form of vocational expert testimony in response to a hypothetical question if the question accurately portrays the plaintiff's physical and mental impairments. *Id.* (citations omitted).

**C.     Analysis**

Plaintiff argues that the ALJ failed to analyze the impact Plaintiff 's obesity had upon his ability to work. He further argues that the Appeals Council acknowledged Plaintiff's severe impairment of obesity, but failed to make an individualized assessment of the impact of obesity on his functioning as required by SSR 02-1p. Pursuant to 42 U.S.C. § 405(g), this Court has jurisdiction to review the Commissioner's final decisions:

> Any individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action commenced within sixty days after the mailing to him of notice of such decision or within such further time as the Commissioner of Social Security may allow. Such action shall be brought in the district court of the United States for the judicial district in which the plaintiff resides, or has his principal place of business, or, if he does not reside or have his principal place of business within any such judicial district, in the United States District Court for the District of Columbia.

"[I]f the Appeals Council grants review of a claim, then the decision that the Council issues is the Commissioner's final decision." *Sims v. Apfel*, 530 U.S. 103, 106-07 (2000). Here, the Appeals Council granted review of the ALJ's decision and issued a final decision denying benefits. Since the decision of the Appeals Council is the Commissioner's final decision, it is this decision that is before this Court for review.

SSR 02-1p classifies individuals who have a Body Mass Index (BMI) greater to or equal to 40 as having the most "extreme" type of obesity with the greatest risk for developing obesity-related impairments. SSR 02-1p. In evaluating the effects of obesity, "Social Security Ruling 02-1p does not mandate a particular mode of analysis, but merely directs an ALJ to consider the claimant's obesity, in combination with other impairments, at all stages of the sequential evaluation." *Nejat v. Comm'r*, 359 Fed. Appx. 574, 577 (6th Cir. 2009) (citation and internal quotation marks omitted). The Commissioner must conduct an individualized assessment of the impact of the claimant's obesity on his or her functional abilities. SSR 02-1p.

The record shows that the Appeals Council granted review of the ALJ's decision for the purpose of assessing whether Plaintiff's obesity constituted a severe impairment and rendered him disabled whether alone or in combination with Plaintiff's other severe impairments. The Appeals Council then adopted the ALJ's findings that Plaintiff did not have an impairment that met or medically equaled an impairment in the Listing of Impairments. The Appeals Council stated that it considered the entire record, then observed that despite Plaintiff's obesity the medical evidence demonstrated that Plaintiff's gait was unassisted and normal. The Council found that the ALJ's RFC accommodated the effects of Plaintiff's obesity, particularly in the limitation that Plaintiff must be allowed to sit six hours out of an eight-hour work day. The Council then adopted the ALJ's findings that Plaintiff was not disabled based on his ability to make a successful adjustment to other work that exists in significant numbers in the national economy.

A review of the record supports the Appeals Council's conclusion. Plaintiff's argument that the Commissioner should have taken steps to bolster the evidence with regard to Plaintiff's obesity is unpersuasive. Indeed, Plaintiff does not point to evidence in the record that the Appeals Council

13

overlooked that could demonstrate that Plaintiff's obesity caused a more significant impact on his ability to work than was allotted for in the RFC. Nor does Plaintiff adequately explain what evidence should have been developed with regard to his obesity. The record documents Plaintiff's obesity but does not indicate that his obesity was a disabling factor. Substantial evidence supports the finding of the Appeals Council. Accordingly, Plaintiff's Motion for Summary Judgment should be denied, Defendant's Motion for Summary Judgment should be granted, and Plaintiff's complaint be dismissed.

**REVIEW OF REPORT AND RECOMMENDATION**:

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. An*, 474 U.S. 140 (1985); *Howard v. Secy. of Health & Human Serve.*, 932 F.2d 505 (6th Cir.1991). Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secy. of Health & Human Serve.*, 931 F.2d 390, 401 (6th Cir.1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir.1987). Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed.R.Civ.P. 72(b)(2), Local Rule 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and

labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections are without merit, it may rule without awaiting the response.

Dated: July 26, 2012          s/ Mona K. Majzoub
                                                     MONA K. MAJZOUB
                                                     UNITED STATES MAGISTRATE JUDGE

## **PROOF OF SERVICE**

I hereby certify that a copy of this Report and Recommendation was served upon Counsel of Record on this date.

Dated: July 26, 2012          s/ Lisa C. Bartlett
                                                     Case Manager